UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR IXIS 2006-HE3, | |
|---|---|
| Plaintiff, | |
| v. | Case No. 15-CV-14155-IT |
| JAMES P. MOYNIHAN and DURHAM COMMERCIAL CAPITAL CORP., | |
| Defendant | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT JAMES P. MOYNIHAN'S MOTION TO DISMISS PER FED. R. CIV. P. 12(b)(6)**

Now comes the Plaintiff, Deutsche Bank National Trust Company, as Trustee for IXIS 2006-HE3 ("Deutsche Bank"), and submits this memorandum of law in support of its Opposition to the Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

Summary of Argument

This is an action brought by the Plaintiff pursuant to Mass. G.L c.106, §3-309 to establish the terms of a lost note given by the Defendant. Defendant's Motion is based on two propositions, the first being that Deutsche Bank was not "in possession" of the note when loss of possession occurred because it had relinquished temporary custody of the note to <u>its</u> loan servicing agent, Ocwen Loan Servicing, LLC ("Ocwen") who, in turn, caused the note to be sent to <u>Deutsche Bank's</u> attorneys for purposes of prosecuting foreclosure of the mortgage securing Defendant's performance of his obligations under the Note. Defendant wholly ignores the significant body of case law which recognizes that possession for Article 3 purposes may be actual or *constructive through an agent.* Instead, Defendant diverts the Court's attention to a line

1

of cases wherein the party seeking enforcement of the note never had actual or constructive possession of the note and instead was relying on a lost note affidavit executed by a prior holder.

Defendant's second proposition that loss of possession by Deutsche Bank was the result of a "transfer" [see G.L. c. 106, §3-309(a)(ii)] is equally flawed. Deutsche Bank's release of the note to its loan servicer Ocwen, and Ocwen's transmittal of the same to Deutsche Bank's attorney was for the purpose of "prosecuting foreclosure of the Mortgage" (Complaint, ¶¶ 22 and 23). These transmittals were not for the purpose of giving either Ocwen or Deutsche Bank's attorney "the right to enforce the instrument," i.e. the *note*. Indeed, neither Ocwen nor Deutsche Bank's attorney could have sought to enforce the note by bringing an action thereon or otherwise because the Defendant, the lone obligor on the note, had obtained a Chapter 7 discharge in October of 2008. Rather, the reasonable inference is that the note was provided to Ocwen, and in turn, to Deutsche Bank's counsel for the purpose of evidencing Deutsche Bank's standing to prosecute the foreclosure in the first instance.

## Relevant Facts

Defendant gave a promissory note to New Century Mortgage Corporation ("New Century") in the original principal amount of $360,000.00 dated May 1, 2006 (the "Note") [Complaint, ¶7]. The Note bears a single indorsement in blank by New Century and is thus bearer paper pursuant to G.L. c. 106, §3-205(b) [Complaint, ¶8 and Exhibit A thereto]. Deutsche Bank acquired physical possession of the Note as indorsed in blank by New Century in May, 2006 [Complaint, ¶ 9].

To secure his obligations under the Note, the Defendant granted a mortgage encumbering property in Lowell, Massachusetts to New Century in the original principal amount of $360,000.00 dated May 1, 2006 and duly recorded with the Middlesex North District Registry of

Deeds (the "Mortgage") [Complaint, ¶10 and Exhibit B thereto]. The Mortgage instrument gives notice to the Defendant, as mortgagor, that "[t]here . . . might be one or more changes of the Loan Servicer unrelated to a sale of the Note" throughout the duration of the mortgage term [Mortgage, ¶ 20].

New Century assigned the Mortgage to Deutsche Bank in November of 2008 by an instrument duly recorded with said Middlesex North Deeds (the "Assignment") [Complaint, ¶ 15 and Exhibit C thereto].

The Defendant is the sole obligor on the Note. The Defendant obtained a chapter 7 discharge on October 6, 2008, in case no. 08-42021-HJB in the United States Bankruptcy Court for the District of Massachusetts [Complaint, ¶ 19]. As such, Deutsche Bank's sole remaining recourse was and is its in rem right under the mortgage to foreclosure pursuant to the Statutory Power of Sale.

In October, 2011, Deutsche Bank relinquished temporary physical custody of the Note to Ocwen, its then current loan servicer, "for purposes of prosecuting foreclosure of the Mortgage" [Complaint, ¶ 22]. Ocwen, in turn, transmitted the Note to Deutsche Bank's attorneys, Ablitt Scofield, P.C., "for the sole purpose of commencing and prosecuting a foreclosure action on behalf of Deutsche Bank" [Complaint, ¶ 22].

The Defendant filed an action in the Land Court in 2010 against Deutsche Bank challenging the validity of the Assignment and, hence, Deutsche Bank's standing to foreclose the Mortgage (Land Court Case No. 10 MISC 436699). By Judgment dated December 30, 2011, the Land Court granted Deutsche Bank's motion for summary judgment therein recognizing the validity of the Assignment and dismissing Defendant's complaint with prejudice. [Complaint, ¶ 16]. At all times relative to the Defendant's prosecution of the Land Court action, the firm of

Ablitt Scofield represented Deutsche Bank as its attorney. See Ex Parte Judicial Endorsement of Memorandum of Lis Pendens and Certificate of Service annexed thereto (identifying Matt Braucher of Ablitt-Scofield as attorney for the Defendant and a copy of the Land Court docket in 10 MISC 436699) found at TAB 1 hereto.

Deutsche Bank acquired ownership of the Note pursuant to a certain pooling and servicing agreement dated September 1, 2006 by and between a multitude of parties including Morgan Stanley ABS Capital I, Inc. as depositor, Saxon Mortgage Services, Inc. and Master Financial, Inc. as servicers and Deutsche Bank as Trustee and Custodian (the "PSA") (Complaint, ¶14).

Section 3.01 of Article III of the PSA, Administration and Servicing of Mortgage Loans, provides that:

> " each Servicer shall have full power and authority, acting alone or through Subservicers as provided in Section 3.02, to do or cause to be done any and all things in connection with such servicing and administration as it deems necessary or desirable. Without limiting the generality of the foregoing, each Servicer in its own name or in the name of a Subservicer is hereby authorized and empowered in accordance with the servicing standards set forth above, to execute and deliver all instruments of satisfaction or cancellation, or of partial or full release or discharge, and all other comparable instruments, with respect to the Mortgage Loans and the Mortgaged Properties and to institute foreclosure proceedings or obtain a deed-in-lieu of foreclosure so as to convert the ownership of such properties, and to hold or cause to be held title to such properties, on behalf of the Trustee . . . , and the Trustee hereby grants to each Servicer, and this Agreement shall constitute, a power of attorney to carry out such duties including a power of attorney to take title to Mortgaged Properties after foreclosure on behalf of the Trustee. The Trustee shall execute a separate power of attorney in favor of each Servicer for the purposes described herein to the extent necessary or desirable to enable the Servicers to perform its duties hereunder."

Consistent with Section 3.02 of the PSA, Deutsche Bank granted a Limited Power of Attorney to Ocwen Loan Servicing, LLC dated May 21, 2010 authorizing Ocwen to execute

various documents on behalf of Deutsche Bank in connection with the prosecution of foreclosure actions for loans deposited in the Plaintiff trust and numerous other mortgage pools identified in such instrument (the "LPOA"). A copy of this LPOA as recorded with the Middlesex North Registry of Deeds in Book 25043, Page 286 is attached hereto at TAB 2.

The PSA, in Section 3.16 (Release of Mortgage Files) further provides:

> (b) From time to time and as appropriate for the servicing or foreclosure of any Mortgage Loan, . . . the Custodian shall, upon request of any Servicer and delivery to the Custodian, of a Request for Release, release the related Custodial File to such Servicer, and the Trustee shall, at the direction of such Servicer, execute such documents as shall be necessary to the prosecution of such proceedings and such Servicer shall retain the Mortgage File in trust for the benefit of the Trustee. Such Request for Release shall obligate the applicable Servicer to return each and every document previously requested from the Custodial File to the Custodian when the need therefor by Servicer no longer exists, . . . "

The terms "Custodial File" and "Mortgage File" (being defined in the PSA as including everything in the "Collateral File") are defined to include "the items (i) – (viii) of Section 2.01(b)". Item (i) of Section 2.01(b) is "the original Mortgage Note bearing all intervening endorsements . . . "

Finally, Section 3.20 of the PSA provides that "[a]ll Mortgage Files and funds collected or held by, or under the control of, a Servicer in respect of any Mortgage Loans, . . . shall be held by such Servicer for and on behalf of the Trustee and shall be and remain the sole and exclusive property of the Trustee, subject to applicable provisions of this Agreement."

The Ablitt-Scofield firm eventually failed, shut its doors in August 2014 and was then involuntarily placed in a chapter 7 bankruptcy in September of 2014 [Complaint, ¶¶ 30-32] The Ablitt-Scofield firm never returned the original Note to Ocwen or to Deutsche Bank. Despite diligent search neither Ocwen nor Deutsche Bank has been able to locate the original Note and the Note is therefore lost or has been destroyed [Complaint, ¶¶ 33, 34].

Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000). While the court must accept as true all of the factual allegations contained in the complaint, that doctrine is not applicable to legal conclusions. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.; see also *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 48 (1st Cir. 2009) ("In other words, a plaintiff must offer 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation,' in order to claim a 'plausible entitlement to relief.'") (citations omitted). Accordingly, a complaint does not state a claim for relief where the well-pleaded facts fail to warrant an inference of any more than the mere possibility of misconduct. *Iqbal*, 556 U.S. at 679.

"[W]hen... a complainant's factual allegations are expressly linked and admittedly dependent upon a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to

dismiss under Rule 12(b)(6)." *Edwin v. Blenwood Associates, Inc*., 9 F.Supp.2d 70, 72 (D.Mass. 1998) quoting *Beddel v. State Street Bank and Trust Co*., 137 F.3d 12, 17 (1st Cir. 1998).

"In evaluating a Rule 12(b)(6) motion, the court may consider a limited category of documents outside the complaint without converting the motion into one for summary judgment. Such documents include public records and documents sufficiently referred to in the complaint. See *Butler v. Balolia*, 736 F.3d 609, 611 (1st Cir. 2013)." *Charest v. Federal National Mortgage Association*, 9 F.Supp.3d 114 (2014). Documents and publications "purporting to be issued by a public authority" and downloaded from a webpage maintained on a government webpage are generally regarded as self-authenticating. See *U.S. Equal Employment Opportunity Commission v. E.I. DuPont De Nemours & Co.*, C.A. No. 03-1605, Order and Reasons, Oct. 18, 2004 (E.D. LA 2004).

Argument

I.

Deutsche Bank is Entitled to a Declaratory Judgment that it has Standing to Prosecute Foreclosure of the Mortgage

Notwithstanding that the Defendant's personal liability on the Note has been discharged in his 2008 bankruptcy, Deutsche Bank seeks a declaratory judgment that it is the owner and/or holder of the Note and entitled to enforce the terms of the Note and Mortgage, including exercise of the statutory power of sale incorporated by reference in paragraph no. 22 of the mortgage instrument and as provided for by Mass. G.L. c. 183, § 21 and G.L. c. 244, §14.

The effect of bankruptcy discharge, however, "is not to extinguish the debt, but rather to release the debtor from personal liability." *Butler v. The National Bank,* Case No. 07-81047, Opinion dated March 2, 2011 (Bankr.C.D.IL 2011) citing *Hall v. National Gypsum Co.,* 105 F.3d 225 (5th Cir. 1997).

7

Absent an underlying debt or other obligation tied to the mortgage the mortgage is essentially a nullity. See *Eaton v. Federal National Mortgage Association,* 462 Mass. 569, 575-576, 969 N.E. 2d 1118, 1124 (2012) citing, inter alia, *Perry v. Miller,* 330 261, 263, 112 N.E. 2d 805 (1953) (legal title held by mortgagee is "defeasible upon payment or the performance of some other condition) and *Maglione v. BancBoston Mtge. Corp.,* 29 Mass. App.Ct. 88, 90, 557 N.E.2d 756 (1990) ('So it is that a mortgagor retains an equity of redemption, and upon payment of the note by the mortgagor or upon performance of any other obligation specified in the mortgage instrument, the mortgagee's interest in the real property comes to an end").

The Massachusetts Supreme Judicial Court in *Eaton* construed the term "mortgagee" as used in G.L. c. 183, §21 and in G.L. c. 244, §14 to mean "the person or entity then holding the mortgage and also either holding the mortgage note or acting on behalf of the note holder." Although not squarely addressed in *Eaton* as the facts in that case did not involve a lost note, there is no logical reason why the Supreme Judicial Court would treat a person not in possession of the note but entitled to enforce it pursuant to section G.L. c. 106, §3-309 any differently than a holder of the note for purposes of standing to foreclose the related mortgage as both categories of persons are "persons entitled to enforce" the note under G.L. c. 106, §3-301. In either case, the requisite connection is made between the party entitled to enforce the note and the party holding the mortgage. This is entirely consistent with the *Eaton* Court's recognition that "the holder of the mortgagee holds the mortgage in trust for the *purchaser* of the note, who has an equitable right to obtain an assignment of the mortgage, which may be accompanied by filing an action in court obtaining an equitable order of assignment [citations omitted][*emphasis added]*. *Eaton,* 462 Mass. 576-577, 969 N.E.2d 1118, 1124.

Thus for purposes of establishing its standing to foreclose the subject Mortgage, Plaintiff seeks a declaratory judgment that it is the record holder of the Mortgage and a person entitled to enforce the Note.

II.

Deutsche Bank had Constructive Possession of the Note Through its Agents or Attorneys
When Loss of Possession Occurred

Defendant directs the Court's attention to a series of cases involving parties seeking to enforce a lost note who *never* acquired actual or constructive possession of the note. *Desmond v. Raymond C. Green, Inc. as Trustee, et al,* 505 B.R. 365, affirmed *Harborhouse of Glocester, LLC v. Raymond C. Green, Inc,* 523 B.R. 749 (1st Cir. B.A.P. 2014); *Dennis Joslin Co. v. Robinson Broadcasting Corp.*, 977 F. Supp. 491 (D.D.C. 1997) and *Dudley v. S.Va.Univ.,* 502 B.R. 259 (Bankr.W.D. Va. 2013).

In the *Desmond* and *Joslin* cases, the parties seeking to enforce the note were not in actual or constructive possession of the note when loss of possession occurred. Indeed in *Desmond,* the party seeking to enforce the note, was one owner removed from the party who had had possession of the note but then lost it. In *Desmond*, one Murphy gave a promissory note in 2004 to one Hansbury as Trustee of a real estate trust. In 2006, Hansbury assigned his rights in the Murphy note and in the mortgage securing the note to an entity called CPIC. Since Hansbury had lost the note, he provided CPIC with a lost note affidavit and a copy of the note, an allonge purporting to transfer rights under the note and an assignment of mortgage. CPIC, in turn, purported to transfers its right in the note via an allonge in favor of Green. The Bankruptcy Court held, and the 1st Circuit B.A.P. affirmed, that Green could not enforce the note because he was clearly not in possession of the note when loss of possession occurred.

9

A similar fact pattern was before the court in *Joslin*. The Defendant, Robinson Broadcasting Corporation gave a promissory note to Madison National Bank ("Madison"). Madison subsequently failed and the FDIC acquired the note when it became receiver for Madison in 1991. The FDIC sold the note to an entity called 4M Communications in 1997 and gave 4M a lost note affidavit. 4M subsequently purported to assign its rights to the Note to Joslin. Predictably, the *Joslin* court ruled that Joslin could not enforce the note since it was not in possession of the instrument when loss of possession occurred.

In both *Dudley* and in *Marks v. Braunstein,* 439 B.R. 248 (D.Mass.2010), another case cited in the Defendant's motion, the parties seeking to enforce the note simply failed to establish that they had ever acquired possession of the note by any means. Having never acquired possession in the first instance, they could not prove that they were "in possession" when loss of the note occurred.

In stark contrast to facts set forth in the foregoing authorities cited by the Defendant, here, Deutsche Bank acquired actual physical possession of the note in May of 2006. In October of 2011, during the pendency of the affirmative litigation filed by the Defendant-mortgagor in the Land Court challenging Deutsche Bank's standing to foreclose the Mortgage, Deutsche Bank relinquished temporary physical custody of the Note to Ocwen, who, in turn, sent the Note to Deutsche Bank's attorneys, Ablitt-Scofield.

There can be little debate that the Note remained the property of Deutsche Bank while in the hands of both Ocwen and Deutsche Bank's attorneys. Section 3.20 of the PSA could not be more emphatic in stating that the Mortgage File, while in the custody of the Servicer, "remain[ed] the sole and exclusive property of the Trustee". The PSA further obligates the Servicer to return the Mortgage File to the Custodian (Deutsche Bank) when need for the File no

longer existed (Section 3.16). In addition and needless to say, documents or papers supplied to an attorney by a client must be turned over to the client upon the client's demand. The contents of the file, with the possible exception of attorney work-product for which the client has not yet paid, is the property of the client and not the attorney. Massachusetts Ethics Opinion 1992 [ETH 1992-04].

Although the court in *Desmond* refers to 'actual' possession as a requirement for enforcement of a negotiable instrument under §3-309, the fact of the matter is that the word "actual" is nowhere to be found in the text of §3-309. Rather, the person seeking enforcement must merely be "in possession".

While a survey of Massachusetts cases reveals of a dearth of decisions addressing the sufficiency of "constructive possession" for purposes of 106, §§ 3-301 and 3-309, courts in a number of other jurisdictions who have been called upon to address this issue have held that a party in constructive possession of an instrument through an agent is "in possession" for Article 3 purposes. See *Phan v. Deutsche Bank Nat'l Trust Co.,* Case No. 2D14-3364 (Fla.App.2016).

In *Phan,* the mortgagor appealed the final judgment of foreclosure in favor of Deutsche Bank as foreclosing mortgagee. Florida is a judicial foreclosure state. The testimony elicited at trial established that Deutsche Bank in that case never had direct possession of the note although its servicing agent, Wells Fargo, had actual physical possession of the note at the time the foreclosure complaint was filed. The court in *Phan* held that "an agent may hold commercial paper on behalf of its principal, and when it does, the principal constructively possesses the commercial paper. Therefore, when an agent holds a mortgage note on behalf of its principal, the principal has constructive possession of the note and standing to file a complaint for foreclosure as a holder under section 673.3011(1)" [identical, except for the statutory references

contained therein, to G.L. c. 106, §3-301]. The *Phan* case, replete as it is with reference to concurring authorities and to secondary source Legal Commentators on the U.C.C., is attached hereto at TAB 3.

Under similar facts, the Bankruptcy Court in *In re Phillips,* 491 B.R. 255 (Bankr.D.NV 2013) reached the same result. "Fannie Mae's status as 'holder' through its agent, Seterus, is key to its claim to be a 'person entitled to enforce" the Note." The *Phillips* court concluded as follows:

> "Possession, however, is a key element of being a holder. This raises the issue of whether possession as required by Article 3 can be possession by an agent of the person named in the indorsement – so called 'constructive possession.' Both history and logic indicate that it can."

*Id.,* 262. Notably, the *Phillips* court held that "the propriety and ability of an agent to possess an instrument for its principal was explicit under the predecessor of Article 3, the Negotiable Instruments Law" which provided that "delivery means transfer of possession, actual or *constructive* from one person to another." Thus, reasoned the *Philipps* court, "delivery of an instrument, duly endorsed, to an agent sufficed to constitute delivery to the principal, making the principal the holder of the instrument" (citations omitted). *Id.,* at 262.

The Massachusetts version of the Negotiable Instruments Law, G.L. c. 107, §§18-22, in effect until its repeal in 1957 by Section 2 of Chapter 765, Acts of 1957, defined "delivery" in this same manner (i.e. – a "transfer of possession, actual or constructive, from one person to another"). Formerly G.L. c. 107, §18 (see copy annexed hereto at TAB 4).

The *Phillips* court observed that the concept of constructive possession through an agent recognized by the former Negotiable Instruments Law is not disturbed under the current Uniform Commercial Code:

> "as underscored by Comment 1 to the UCC's definition of negotiation: 'negotiation always requires a change in possession of the instrument because nobody can be a holder without possessing the instrument either directly *or through an agent.*' U.C.C. § 3-201 cmt. 1 (2002) (emphasis added). The reasoning for this position is examined in a leading treatise: As the UCC does not define 'delivery' or 'possession,' the non-UCC concept of delivery to an agent whose principal then has constructive possession remains in force because not displaced. Such possession required to qualify a person as a 'holder' may be constructive possession by delivery to another person on that person's behalf. Thus, a person is a 'holder' of a negotiable instrument when it is in the physical possession of his or her agent. LARY LAWRENCE, LAWRENCE'S ANDERSON ON THE UNIFORM COMMERCIAL CODE §1-201:265 (3d ed. 2012). *See also* RESTATEMENT (THIRD) OF AGENCY §8.12 cmt. b (2006)('an agent's possession or control of property on behalf of a principal is tantamount for many purposes to possession or control by the principal."

*Phillips,* 491 B.R. 255, 262-263.

In *Coble v. Suntrust Mortgage Co., Inc.,* Case No. C13-1878-JCC, Order Granting Defendants Suntrust, Freddie Mac, Fannie Mae, and MER's Motion for Summary Judgment in Part, dated February 18, 2015 (D.W.D.Wash.2015), the mortgagors challenged Defendant SunTrust's ability to enforce the promissory note given by them on the basis that the original note was stored in the vault of its parent company, Sun Trust Bank (page 12). In rejecting this contention, the court stated that "the UCC makes no requirement of actual physical possession to be deemed a 'holder' of a note. Citing RCW 62A.3-201, cmt. A. (under the UCC, a holder may possess a note "directly or through an agent")); citations omitted. "Indeed, to adopt the Cobles' argument would have the illogical impact of halting the mortgage industry based on a strict insistence that those enforcing promissory notes be in their physical possession." [page 13]. A copy of the *Coble* case is provided here at TAB 5.

In *U.S. Bank National Association, as Trustee v. Gray, et al,* 2013 Ohio 3340 (2013), the mortgagors asserted that U.S. Bank could not be the note holder when SPS (U.S. Bank's loan servicer), not U.S. Bank, was in physical possession of the note. The court stated that

13

"constructive possession exists when an agent of the owner holds the note on behalf of the owner" [page 7]. In *Gray,* the court heard testimony to the effect that "SPS acts as the servicing agent for US Bank, managing all the day-to-day aspects of Paul Gray's loan pursuant to a power of attorney that U.S. Bank granted it." As US Bank's agent, SPS held the note on US Bank's behalf. US Bank, therefore, maintained constructive possession of the note and, as holder of the note, could enforce it" [page 8]. A copy of the *Gray* case is provided here at TAB 6.

Other cases reaching the same result under similar facts are *Federal Deposit Insurance Corporation v. Linn,* 671 F. Supp. 547, 553 (N.D.Ill 1987) (entity acting as administrator for the FDIC had physical possession of the subject note and guaranties at issue – court held that the administrator's possession of those instruments *was* FDIC's possession of the instruments and thus the FDIC had "proved itself a legal transferee") and *Midfirst Bank, SSB v. C.W. Haynes & Co, Inc.,* 893 F.Supp. 1304 (D.S.C. 1994) (where Custodial Agreement between the transferor of certain notes and Bank of America provided that Bank of America would hold the notes on behalf of the Government National Mortgage Association ("GNMA") and GNMA never had physical possession of the mortgage notes, "GNMA constructively possessed the notes and became a holder of same upon the transferor's delivery of same to Bank of America"). *See also, Georg v. Metro Fixtures Contractors, Inc.,* 178 P.3d 1209 (Colo. 2008) (corporate payee of check deposited into its bank account by corporate defendant was in constructive possession of the check and qualified as a holder in due course).

By any measure, the several enumerated powers given to Ocwen by Deutsche Bank in both the PSA, Section 3.01, and in the LPOA, to facilitate prosecution of foreclosure of the Mortgage, Ocwen was acting at all times relevant to the operative events described in Plaintiff's Complaint as Deutsche Bank's servicing agent. Similarly, the Ablitt-Scofield firm was acting as

Deutsche Bank's attorney for purposes of prosecuting the foreclosure and was, therefore, also Deutsche Bank's agent. See *United States v. Munoz,* 605 F.3d 359, 370 (6th Cir. 2010) (citing general principle that "lawyers are agents" as expressed in *Pioneer Investment Services Co. v. Brunswick Associates,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

Defendant's position that Deutsche Bank was not "in possession" of the Note when loss of possession occurred runs afoul of the overwhelming weight of authority to the contrary as noted above since Ocwen and Ablitt-Scofield were clearly agents of Deutsche Bank and Deutsche Bank was in possession of the Note through its agents.

Moreover, as alluded to in some of the aforementioned cases, Defendant's position defies common sense and runs afoul of the underlying purposes and policies of the U.C.C. as articulated in G.L. c. 106, §1-103 to "modernize the law governing commercial transactions" and "to permit the continued expansion of commercial practices through custom, usage and agreement of the parties." As is evident in the several cases cited herein on the subject of constructive possession, it has become the custom in the residential mortgage industry for note holders to employ agents or custodians to hold documents on their behalf or to advance and/or protect the note holder's interests in mortgage foreclosure, bankruptcy and other proceedings which may affect their interests in the note. The Defendant's strict interpretation of Article 3's "in possession" requirement ignores the reality that note holders in the secondary mortgage market, including Fannie Mae and Freddie Mac, invariably employ servicing agents to assist in prosecution of mortgage foreclosures and/or to act as permanent or temporary document custodians. It simply defies common sense to deprive these mortagees of note-holder status under G.L. c. 106, §3-301 or of "in possession" status under c. 106, §3-309 simply because of

the realities of modern day commerce, custom and usage in the residential mortgage servicing industry.

III.

<u>Deutsche Bank Did Not Transfer and Could Not Have Transferred the Note to Ocwen for the purpose of enabling Ocwen to enforce the Note in its own right because the Defendant, as lone obligor on the Note, obtained a Chapter 7 Discharge in 2008</u>

The Defendant next argues that any agency relationship between Deutsche Bank or its attorneys is irrelevant because, citing G.L. c. 106, §3-309(a)(ii), Defendant argues that Deutsche Bank's loss of possession was the result of its of its "transfer" of the Note to such agents. Section 3-309(a)(ii) states that when a person seeks to enforce a lost instrument the loss cannot be the result of a transfer by such person or lawful seizure.

Pursuant to G.L. c. 106, §3-203, "an instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument."

As previously noted, the Defendant is the sole obligor on the Note. He received his Chapter 7 Discharge in October of 2008. Consequently, there were no other persons against whom the Note could have been enforced in 2011 when Deutsche Bank relinquished temporary custody of the Note to Ocwen for purposes of prosecuting foreclosure of the mortgage. Any attempt by Deutsche Bank, Ocwen or the Ablitt Scofield to enforce the Note against the Defendant would have violated the discharge injunction provided for in 11 U.S.C. 524(a)(2).

Moreover, as sufficiently broad as the Limited Power of Attorney given by Deutsche Bank to Ocwen was relative to prosecuting or facilitating the prosecution of proceedings to foreclose the Mortgage, none of the enumerated powers therein authorized Ocwen to prosecute an enforcement action on the Note. See, specifically, paragraph no. 8 of the LPOA.

16

In analyzing an almost identical LPOA in *In re Hayes,* 393 B.R. 259, 270, note 6 (Bankr.D.Mass. 2008) the Bankruptcy Court emphasized the limited nature of the authority provided by such instrument. Like the LPOA in *Hayes,* the LPOA given by Deutsche Bank to Ocwen states that "[t]his LPOA is to be construed and interpreted as a limited power of attorney. The enumeration of specific items, rights acts or powers herein is not intended, nor does it give rise to, and it is not to be construed as a general power of attorney." [See the LPOA at TAB 2, page 3, fourth full paragraph].

To the extent that the last full paragraph of Section 3.16 (see copies of Sections 3.01, 3.16 and 3.20 of the PSA appearing at TAB 7) authorizes the Servicer to take actions with respect to enforcement of the Note, it is clear from such paragraph that all such actions were to be taken in the name of Deutsche Bank and <u>not</u> as an independent act of the Servicer or in the Servicer's own right:

> "Upon written certification of a Servicing Officer, the Trustee shall execute and deliver to the applicable Servicer any court pleadings, requests for trustee's sale or other documents reasonably necessary to the foreclosure or trustee's sale in respect of a Mortgaged Property or to any legal action brought to obtain judgment against any Mortgagor on the Mortgage Note or Mortgage or to obtain a deficiency judgment, or to enforce any other remedies or rights provided by the Mortgage Note or Mortgage or otherwise available at law or in equity, or shall exercise and deliver to the applicable Servicer a power of attorney sufficient to authorize such Servicer to execute such documents on its behalf. Each such certification shall include a request that such pleadings or documents be executed by the Trustee and a statement as to the reason such documents or pleadings are required and that the execution and delivery thereof the Trustee will not invalidate or otherwise affect the lien of the Mortgage, except for the termination of such a lien upon completion of the foreclosure or trustee's sale."

Consequently, Ocwen had no authority in any event, aside from the fact that the Defendant's liability on the Note had previously been discharged, to enforce the Note independently in its own name.

Given that the Defendant vigorously opposed Deutsche Bank's standing to foreclose the Mortgage in the Land Court proceeding, it is reasonable to infer that Deutsche Bank provided the original Note to Ocwen, and that Ocwen in turn provided it to Deutsche Bank's counsel, for the purpose of evidencing that indeed there remained a debt that was secured by the Mortgage even if the Defendant's personal liability thereon had been discharged. That fact, in conjunction with the assignment of Mortgage declared valid in the Land Court's Judgment, gave Deutsche Bank the requisite standing to prosecute a foreclosure of the Mortgage.

## Conclusion

Deutsche Bank is entitled to a declaratory judgment determining that it is a party entitled to enforce the Note within the meaning of G.L. c. 106, §309 (a). Deutsche Bank was in constructive possession of the Note through its servicing agent (Ocwen) and its attorney (Ablitt-Scofield) at the time loss of possession occurred.

Deutsche Bank did not "transfer" the Note to either Ocwen or Deutsche Bank's attorneys for purposes of giving them an independent right of enforcement. Indeed, no such action to enforce the Note could have been taken by Ocwen or Ablitt-Scofield because they were not vested with any authority under the LPOA or the PSA to do so and, more significantly, because the Defendant as lone obligor on the Note, had been discharged of any personal liability on the Note in 2008.

Since the debt evidenced by the Note is not extinguished despite the Defendant's Chapter 7 discharge and because Deutsche Bank is a person that would be entitled to enforce the Note but for the Defendant's Chapter 7 Discharge, the requisite connection has been made between Deutsche Bank as the party entitled to enforce the Note and Deutsche Bank as holder of the

Mortgage to satisfy the standing requirement articulated in *Eaton* such that Deutsche Bank is entitled to a declaratory judgment that it had standing to foreclose the Mortgage.

WHEREFORE, Deutsche Bank respectfully requests that the Court:

(1) Deny Plaintiff's Motion to Dismiss the Complaint pursuant to Fed.R.Civ.Pro. 12(b)(6) for failure to State a Claim upon which relief may be granted;

(2) In the alternative, should the Court determine that Deutsche Bank was not in possession of the Note when loss of possession occurred and/or that its delivery of the Note to Ocwen was a "transfer" within the meaning of G.L. c. 106, §3-203, grant leave to Deutsche Bank to file an amended complaint either substituting Ocwen as the party Plaintiff or adding Ocwen as an additional Plaintiff; and

(3) Grant such further relief as the Court deems just.

Dated: March 25, 2016

Respectfully submitted,

Plaintiff, Deutsche Bank National Trust Company, as Trustee for IXIS 2006-HE3, By its attorney,

/s/ John S. McNicholas
John S. McNicholas, Esq., BBO# 546542
Korde & Associates, P.C.
321 Billerica Road, Suite 210
Chelmsford, MA 01824-4100
(978) 256-1500 (ext. 203)
jmcnicholas@kordeassoc.com

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants if applicable on March 25, 2016.

/s/ John S. McNicholas
John S. McNicholas, Esq.