# TAB 5

JACQUE F. COBLE and KATHLEEN L. COBLE, Plaintiffs,
v.
SUNTRUST MORTGAGE, INC. et al, Defendants.

CASE NO. C13-1878-JCC

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF
WASHINGTON AT SEATTLE

February 18, 2015

Header ends here.

THE HONORABLE JOHN C. COUGHENOUR

ORDER GRANTING DEFENDANTS SUNTRUST, FEDDIE MAC, FANNIE MAE, AND MERS'S MOTION FOR SUMMARY JUDGMENT IN PART

This matter comes before the Court on the motion for summary judgment of Defendants Suntrust Mortgage, Inc. ("SunTrust"), Federal Home Loan Mortgage Corporation ("Freddie Mac"), Federal National Mortgage Association ("Fannie Mae"), and Mortgage Electronic Registration Systems, Inc. ("MERS") (Dkt. No. 92); supporting exhibits (Dkt. Nos. 93 *SEALED, 94 & 95); Plaintiffs' response (Dkt. No. 111); Plaintiffs' supporting exhibits (Dkt. Nos. 112 & 113); Defendants' reply (Dkt. No. 114), Defendants' supplemental declaration (Dkt. No. 115), and Defendants' request for Judicial Notice regarding a fact in their reply (Dkt. No. 116).

Many of Plaintiffs' claims were waived when they failed to contest the foreclosure sale of both of their properties. With respect to Plaintiffs' residence, the claims that survive waiver lack merit. With respect to Plaintiffs' rental property, equitable principles urge the Court to retain

Page 2

jurisdiction over Plaintiffs' claims for trespass/property damage and invasion of privacy, although solely with respect to Defendant SunTrust. All other claims with respect to the moving Defendants warrant dismissal under summary judgment.

Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby **GRANTS** the motion in part for the reasons explained herein.

I. FACTUAL BACKGROUND

This case pertains to the nonjudicial foreclosure of two properties, a residence and a rental, formerly owned by Plaintiffs Jacque and Kathleen Coble ("The Cobles").

A. The Residence

The Cobles bought their residence at 3215 McLeod Road in Bellingham in 2002. Dkt. No. 77, p. 5. On June 25, 2007, they refinanced the property by executing a promissory note ("residence note"), indorsed in blank for $167,700 payable to SunTrust. Id. At the same time, they executed a deed of trust with SunTrust Mortgage ("SunTrust" unless otherwise specified) to secure payment of the note. Id. That document listed SunTrust Mortgage as the lender, Washington Administrative Services as the trustee, and MERS as "beneficiary . . . solely as a nominee for Lender and Lendor's successors and assigns." Dkt. No. 29, Ex. 1. Shortly thereafter, SunTrust's parent company, SunTrust Bank, obtained the note, indorsed it in blank, and placed it in its vault where it has since remained. Dkt. No. 95, p. 4. SunTrust Mortgage retained servicing rights.

Page 3

Between 2007 and January 13, 2012, SunTrust transferred all its beneficial



-1-

interest, ownership, and right to payments on the note to Freddie Mac.[1] Dkt. No. 77, p. 6. On July 18, 2011, MERS assigned its own interest in the residence deed of trust to SunTrust. *Id.* at 8.

The Cobles defaulted on their loan in the fall of 2010. Dkt. No. 92, p. 4. In response, on March 2, 2011, Northwest Trustee Services ("NTS") requested a loss mitigation form from SunTrust, receiving it nine months later on December 5, 2011. *Id.; see also* Dkt. No. 111, p. 4. The form stated that the beneficiary's agent had contacted the Cobles to explore options to avoid foreclosure. The Cobles acknowledge receipt on December 5, 2011 but deny being offered a meeting to discuss options in lieu of foreclosure. *See* Dkt. No. 111, pp. 4-5, 11. Also on December 5, 2011, NTS issued a Notice of Default to the Cobles, listing Freddie Mac as owner of the note, and SunTrust as the loan servicer. Dkt. No. 77, p. 9. The Cobles received this notice, and wrote to NTS to dispute the default. *Id.* NTS responded, stating that they were communicating the issue with the servicer. *Id.* at 10. NTS was formally appointed by SunTrust as successor trustee for the residence deed of trust on January 13, 2012. *Id.* at 9-10.

On February 20, 2013, NTS delivered a Notice of Foreclosure to the Cobles, executing a Notice of Trustee Sale to foreclose the residence deed of trust five days later. Dkt. No. 77, p. 12. On July 2, 2013, NTS sold the Cobles' home to the "Beneficiary" for $260,316, who directed NTS to issue the trustee's deed to Freddie Mac. *Id.* at 13. The Cobles did not move to restrain the sale. Dkt. No. 92, p. 4.

### B. The Rental

Page 4

At the same time they purchased their residence in 2007, the Cobles executed a note and deed of trust on an adjacent property they owned and intended to one day rent out for profit. Dkt. No. 77 at 14. The process surrounding the rental mortgage, indorsed promissory note, and deed of trust were identical as those for the residence—and involved the same Defendants—up until the Cobles defaulted on both loans in 2010. *Id.* at 14-17.

Defendants' response to the Cobles' default on the rental loan was handled differently than the residence default. Beginning in fall of 2010, the Cobles saw unknown persons driving to the rental property several times a week. Dkt. No. 77, p. 18. These people walked around the property and took photographs. *Id.* After several of these unexplained visitations, Mr. Coble discovered a sticker from a loan collector on the property deeming it "abandoned," along with contact information for the collector. *Id.* at 19. Mr. Coble called the provided number and the collector informed him that he would have to contact his mortgage company. *Id.*

In early October 2010, another person—later revealed to be a loan collector—arrived and changed the locks on the rental property. Dkt. No. 77, p. 19. Defendants deny any involvement by Freddie Mac or MERS, but admit SunTrust's involvement in this effort to "secure" the property. Dkt. No. 91, p. 31. In response, the Cobles made a payment on their rental loan and called SunTrust demanding access. Dkt. No. 77, p. 19. SunTrust told them it was unable to provide access until the Cobles became current with their loan payments. *Id.* On October 7, 2010, SunTrust issued a letter to the Cobles telling them they had abandoned the rental property and would have ten days to respond and certify otherwise. Dkt. No. 111, p. 2. The Cobles allege that on the same day, SunTrust directed loan collectors to enter the property, winterize it, mow the lawn, and change the locks. *Id.* at 3. Mr. Coble alleges he sent the requested certification on

Page 5



October 15, 2010, within the ten day deadline set by SunTrust. Id. The loan collector's work commenced, per SunTrust's instructions, on October 16, 2010. Id.

The Cobles lacked access to the rental property for over two years. Dkt. No. 77, p. 20. They allege that during this time, several of their personal possessions—including surplus marble for countertop use, a glass-top stove, insulation materials, commercial-grade metal studs, and a twin-basin sink—were stolen. Id. The loan collectors who had changed the locks continued to maintain the property throughout the two year period; winterizing it, draining water lines, and adding antifreeze to toilets and sinks. Id. at 21.

On May 22, 2012, SunTrust executed a document declaring SunTrust the beneficiary and holder of the rental note secured by the rental deed of trust. Dkt. No. 77, p. 21. Thereafter, SunTrust executed a Foreclosure Loss Mitigation Form and events continued as they had for the residence property, culminating in a foreclosure sale first to Fannie Mae and then to a third-party buyer. Dkt. No. 77, p. 22.

### C. The Present Suit

On September 18, 2013, nine months following the last foreclosure sale, the Cobles initiated this action. See Dkt. No. 77. The Cobles sue moving Defendants for: (1) trespass/property damage,[2] (2) invasion of privacy/intrusion upon seclusion,[3] (3) violation of the Deeds of Trust Act ("DTA"), RCW 61.24, et seq., (4) a quiet title action against Freddie Mac only, (5) misrepresentation by MERS and SunTrust, (6) violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86, et seq.,[4] and (7) seek injunctive relief staying a pending

Page 6

Whatcom County unlawful detainer action. Id. Plaintiffs seek declaratory relief, injunctive relief, money damages, as well as costs and attorney's fees. Id.

## II. DISCUSSION

### A. Judicial Notice

As a preliminary matter, the Court takes judicial notice of the fact that SunTrust Mortgage, Inc. was exempt from the mediation requirement of the Foreclosure Fairness Act in calendar years 2012, 2013, 2014, and 2015. This fact is capable of accurate and ready determination: Suntrust Mortgage, Inc. is listed as exempt on the Washington Department of Commerce's website.[5] Courts may take judicial notice at any stage of the proceeding where requested and supplied with necessary information from a sufficiently reliable source, see Fed. R. Ev. 201(d), and the Court does so with respect to SunTrust's exempt status.

### B. Standard on Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the case's outcome. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if there is enough evidence for a reasonable jury to return a verdict for the nonmoving party. See id. at 49. At the summary-judgment stage, evidence must be viewed in the light most favorable to the nonmoving party, and all justifiable inferences must be drawn in the non-movant's favor. See

Page 7

Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 960 (9th Cir. 2011).



### C. By Failing to Contest the Foreclosure Sales, Plaintiffs Waived Many of their Claims

1. Plaintiffs Waived their Right to Contest the Sale of Either Property

Under the DTA, a person waives "any proper grounds for invalidating [a] Trustee's sale" when they fail to "bring a lawsuit to restrain the sale." RCW 61.24.040(f)(IX). This doctrine operates to create a legal preference for suits restraining a foreclosure sale over those challenging it *post factum* so as to "promote the stability of land titles" while still "provid[ing] an adequate opportunity for interested parties to prevent wrongful foreclosure." *E.g. Cox v. Helenius*, 693 P.2d 683, 686 (Wash. 1985) (en banc). As such, the waiver doctrine is applied liberally under Washington law.

To demonstrate that a borrower has waived the ability to contest the sale of his property, the lien holder must show that the borrower (1) received notice of the right to enjoin the sale, (2) had actual or constructive knowledge of a defense to foreclosure prior to the sale, and (3) failed to bring an action to obtain a court order enjoining a sale. *Steward v. Good*, 754 P.2d 150, 154 (Wash Ct. App. 1988).

Defendants have satisfied the elements to establish the Cobles' waiver. First, the Notices of Trustee's Sale provided to the Cobles include language from RCW 61.24.040(f)(IX). Dkt. No. 14, Exs. 4 & 5. If a lien holder provides written notice in a form provided by the statute, this "recital shall be prima facie evidence of . . . compliance [with the notice element]. . ." RCW 61.24.040(7). Borrowers may then rebut this presumption by showing they did not receive such notice. *Id.* The Cobles do not deny they received the Notices of Trustee's Sale.

Defendants also meet the second element to establish the Cobles' waiver. The second element does not require that plaintiffs deeply understand all legal defenses, but possess "mere[] knowledge of the facts sufficient to establish the elements of a claim." *Brown v. Household Realty Grp.*, 189 P.3d 233, 236 (2008). In *Universal Life Church*, this Court found sufficient knowledge based on evidence that plaintiffs contacted defendants regarding issues with their loan. 2007 WL 1185861, at *1. Here, the Cobles possessed sufficient prior knowledge. The record is replete with letters and warnings about impending foreclosure action, including documents advising the Cobles to seek counsel and numerous referrals to low cost and free legal assistance. The Cobles attempted to contact SunTrust regarding these warnings on multiple occasions—demonstrating their receipt of notice—and could have sought an injunction then.

The third and final factor to demonstrate waiver is uncontested: neither party disputes that the Cobles failed to restrain the foreclosure sales until bringing the present suit nine months after the final foreclosure sale.

2. Statutory Exemptions for Waiver of Residence Foreclosure Sale

Even if a defendant can demonstrate waiver, a few statutorily-exempted claims may survive. Under RCW 61.24.127, failure to seek an injunction does not waive claims for fraud, misrepresentation, "[f]ailure of the trustee to materially comply with the provisions of th[e DTA]," or violations of the WCPA or RCW 61.24.026 (the latter concerning notice of sale to the senior beneficiary). The statutory exceptions to waiver are only available for claims arising from the foreclosure of property in which the plaintiff resides. Such claims may only seek money damages and cannot "affect in any way the validity or finality of the foreclosure sale." RCW 61.24.127. The Court notes that the

Page 8



Cobles' alleged DTA violations may only survive against the

Page 9

Trustee, NTS, and therefore DTA claims against the moving defendants do not survive waiver. RCW 61.24.127 (including specifically, "[f]ailure *of the trustee* to materially comply with the provisions of th[e DTA]") (emphasis added). The DTA is analyzed, *infra*, as it forms the basis for other claims.

These statutory limitations foreclose all of the Cobles' claims with regard to their residence except for: (1) their CPA claims against moving Defendants and (2) their misrepresentation claim against Defendants MERS and SunTrust.

Before assuming the Cobles cannot claim a statutory exemption to waiver for the rental property, the Court is cautious to "look deeper into the borrower's purpose in obtaining the loan," to ensure that a lender is not attempting to circumvent protections by characterizing a loan as commercial. *See Frizzell v. Murray*, 313 P.3d 1171, 1180-81 (Wash. 2013) (en banc) (Gonzales, J. concurring). There are no such red flags here. The Cobles' intent for the rental property was always to generate profits. None of the Cobles' claims regarding the rental property are eligible for a statutory exemption to waiver.

3. Equitable Defenses to Waiver

As a last step in the waiver analysis, the Court considers other equitable factors in order to "ensure that interested parties have a full and fair opportunity to avoid wrongful foreclosure." *Mulcahy v. Fed. Home Loan Mortgage Corp.*, No. C13-1227RSL, 2014 WL 504836, at *3 (W.D. Wash. Feb. 7, 2014); *see also Albice v. Premier Mortg. Serv. of Wash., Inc.*, 276 P.3d 1277 (Wash. 2012) (en banc) ("The word 'may' [in RCW 61.24.040(f)(TX)] indicates the legislature neither requires nor intends for courts to strictly apply waiver."). Even if a defendant shows all elements for waiver, a court may refuse to apply the doctrine if to do so would be inequitable.

Page 10

Among the types of inequitable conduct which may overcome waiver under Washington law are the following:

- Whether the statutory violation [of the DTA] effectively divested the trustee of its statutory authority to conduct a nonjudicial sale;
- Whether the borrower had an adequate opportunity to prevent the wrongful foreclosure;
- Whether the lender or the trustee caused unfairness or surprise in the process [(such as allowing borrower to believe they had taken the necessary steps to restrain the sale)];
- Whether the purchaser at the trustee sale was on inquiry notice of the procedural irregularities or was truly innocent and would be unfairly harmed if the sale were voided;
- Whether the sale price is grossly inadequate when compared to actual market value; and
- Whether the borrower promptly asserted his or her objections after the sale.

*Mulcahy*, 2014 WL 504836, at *4.

The Court finds no equitable factors affecting the foreclosure of the Cobles' residence. However, the Court finds that changing the rental property's locks two years prior to foreclosure initiation, and the ensuing confusion around the Cobles' ability to make payments and access the property, constitutes "unfairness or surprise."[6] Defendant SunTrust's actions in so



-5-

controlling the rental property led not only to apparent theft of the Cobles' property but also to legitimate confusion around the procedures necessary for them to regain access to the rental. This inequitable conduct has not been linked to Defendants Freddie Mac or MERS, but apparently was done at the initiation of Defendant SunTrust.

4. Summary Judgment Granted to Certain Claims Pursuant to the Waiver Doctrine

The Court finds that the following claims have been waived:

Page 11

>  1) *With respect to the residence,* all claims raised by Plaintiffs not falling into a statutory exemption to waiver:
>
>> a. Any allegation that Trespass or Property Damage occurred to their residence;
>> b. Any allegation that Invasion of Privacy/Intrusion Upon Seclusion occurred to their residence;
>> c. Their DTA claims against all moving Defendants;
>> d. The quiet title cause of action against Freddie Mac;
>> e. The cause of action seeking preliminary and permanent injunctive relief against Freddie Mac.

> 2) *With respect to the rental,* all claims save Plaintiffs' claims for intrusion and trespass/destruction of property, which survive waiver due to the inequitable conduct of Defendant SunTrust.

Defendants' motion for summary judgment with respect to the aforementioned claims is hereby **GRANTED**.

**D. Remaining Claims Pertaining to the Residence**

The Court now addresses the two claims pertaining to the Cobles' residence which were statutorily exempted from dismissal pursuant to waiver, misrepresentation and the CPA claim. As is discussed below, both lack merit and are appropriately dismissed on summary judgment.

1. CPA Claim

Plaintiffs' CPA claim arises primarily because violation of the DTA is a *per se* violation of the CPA. RCW 61.24.135. In their response brief, the Cobles' also allege a CPA violation based on the traditional elements of the Washington CPA: (1) an unfair or deceptive act (2) occurring in trade or commerce (3) affecting the public interest, (4) injuring plaintiff in either his business or property, and (5) causation by the defendant. *Hangman Ridge Training Stable, Inc. v. Safeco Tit. Ins. Co.*, 105 Wn. 2d 778, 780 (1986).

First, the Court must first address the DTA violations alleged by the Cobles, each of which are based on a mistaken reading of Washington law.

Page 12

a) Physical Possession is Not Required to be a "Holder" and Enforce



The Cobles claim that either SunTrust or MERS violated the DTA by appointing NTS to enact foreclosure, as neither of them possessed the requisite authority as beneficiary to do so. They argue this is so because neither SunTrust nor MERS physically possessed the promissory note or Deed of Trust. Defendants counter that Washington law allows "holders" of an instrument to execute thereon. The Court agrees with Defendants.

The parties do not dispute that a person must "hold" the relevant instrument in order to enforce it. *See Bain v. Metropolitan Mortg. Group, Inc.*, 285 P.3d 34 (Wash. 2012). Under RCW 62A.3-301, "the holder of the instrument. . . may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument." *Id.* at 44 (quoting RCW 62A.3-301).

The Cobles argue that Defendant SunTrust had no right to enforce the promissory note because it was not in physical possession of the note stored in the vault of its parent company, SunTrust Bank.7 This argument is misguided.8 The UCC makes no requirement of actual physical possession to be deemed a "holder" of a note. RCW 62A.3-201, cmt. A (under the UCC a holder may possess a note "directly or through an agent"); *see also Ortega v. Nw. Tr. Servs., Inc.*, 179 Wash. App. 1033 (Wash. Ct. App. 2014); *In re Butler*, 512 B.R. 643, 653 (Bankr. W.D. Wash. 2014) (constructive possession found sufficient).

Page 13

Indeed, to adopt the Cobles' argument would have the illogical impact of halting the mortgage industry based on a strict insistence that those enforcing promissory notes be in their physical possession. Both the relevant law and common sense, given the complex nature of deeds of trust arrangements, indicate that the Cobles are incorrect in demanding physical possession of the note to trigger "holder" status.

b) "Holding" Triggers Beneficiary Status to SunTrust

The Cobles claim that SunTrust was never a lawful beneficiary and therefore lacked the authority to institute foreclosure. *See* Dkt. No. 77, p. 39. This argument is based on the tenuous legal argument that a "holder" who is not an instrument's "owner" may not enforce the instrument. The Washington Court of Appeals has held—in a decision that remains good law—that "[t]he holder of the note is entitled to enforce it, regardless of ownership." *Trujillo v. Nw. Tr. Servs., Inc.*, 326 P.3d 768, 776 (Wash. Ct. App. 2014). This reading is based on a portion of the Washington UCC which states:

> "Person entitled to enforce" an instrument means (i) the **holder** of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to RCW 62A.3-309 or 62A.3-418(d). A person may be a person entitled to enforce the instrument even though the person is not the **owner** of the instrument or is in wrongful possession of the instrument."

RCW 62A.3-301 (emphasis added).

Though a Washington Supreme Court case, *Lyons v. U.S. Bank Nat. Ass'n*, touched on the issue of "holder" versus "owner" for negotiable instrument enforcement, this case did not overrule *Trujillo*, nor was a legal



discussion between a "holder" or "owner" at issue in the case.

Page 14

336 P.3d 1142 (Wash. 2014) (en banc). Based on the current state of the law,9 a note holder is a beneficiary entitled to enforce the note. Defendant SunTrust is, therefore, a "holder" and beneficiary as a matter of law.

c) Whether MERS is considered a Beneficiary is Irrelevant

The Cobles further contend that the DTA was violated as MERS was not an actual beneficiary. However, NTS' power to act derived from their appointment by SunTrust, not MERS. In other words, MERS did not need to be considered a beneficiary to authorize the foreclosure of the Cobles' residence. Plaintiffs fail to assert a DTA violation based on the undisputed fact that MERS had extremely limited involvement.

d) Procedural Irregularities

Finally, the Cobles claim that several procedural irregularities constitute a DTA violation. *See* Dkt. No. 111, p. 4. First, they claim that the Loss Mitigation Notice that Defendants were required to provide does not indicate whether it was received. *Id.* However, by their own admission, the Cobles received the notice—the form's omission is a mere technicality. *Id.* Second, they complain that the Notice failed to state that the Cobles refused a meeting as required under the Foreclosure Fairness Act. However, the Court has already taken judicial notice of the fact that SunTrust was exempt from that requirement. *See supra*, Part II(A). Third, the Cobles suggest that SunTrust's beneficiary declarations failed to comply with the DTA because they stated SunTrust was the "holder" rather than the "actual holder" as would reflect the language of RCW 61.24.030(7)(a). Not only did SunTrust file a subsequent clarifying

Page 15

declaration that it was the actual holder, *see* Dkt. No. 113, Ex. 6, p. 2, but Plaintiffs cite no authority to argue such a statement is insufficient.

The procedural irregularities raised by the Cobles lack a factual or legal basis to sustain a DTA claim. There is no genuine issue of material fact with regard to whether moving Defendants violated the DTA. As such, to the extent that Plaintiffs' CPA claim rests on a DTA violation, moving Defendants are entitled to summary judgment.

e) Standard CPA Claim

The Cobles also claim a CPA violation based on the traditional elements of the Washington CPA: (1) an unfair or deceptive act (2) occurring in trade or commerce (3) affecting the public interest, (4) injuring plaintiff in either his business or property, and (5) causation by the defendant. *Hangman Ridge Training Stable, Inc. v. Safeco Tit. Ins. Co.*, 105 Wn. 2d 778, 780 (1986). Not only do Plaintiffs' allegations of unfair or deceptive practices lack a factual or legal basis—their primary argument being that MERS acted as an ineligible beneficiary, an impression the Court has already dispelled—these allegations all depend on elements of the DTA violation already disposed of. The Court finds that there remains no genuine dispute of material fact, and moving Defendants are entitled to judgment as a matter of law with regard to Plaintiffs' CPA claim. Summary judgment is hereby **GRANTED** with respect to the Cobles' CPA claim.

2. Misrepresentation

The Cobles' misrepresentation claim is based solely on the false premise that neither Defendants MERS nor SunTrust were proper beneficiaries of the residence deed of trust. *See* Dkt. No. 77, p. 42. Defendants are entitled



to judgment as a matter of law as there remains no

Page 16

genuine dispute of material fact as to whether SunTrust was the holder and therefore the beneficiary, and therefore had the right to foreclose. No misrepresentation occurred. Summary judgment is hereby **GRANTED** with respect to the Cobles' misrepresentation claim.

### E. Surviving Claims Pertaining to the Rental

As discussed, *supra*, the Cobles have an equitable basis for their claims for trespass/destruction of property and intrusion to survive waiver. This applies solely to the rental property and is based on Defendant SunTrust's actions in changing the locks on the rental property and prohibiting access for two years.

Summary judgment is not appropriate with respect to the following tort claims against Defendant SunTrust. All other claims pertaining to the rental property are dismissed under the waiver doctrine.

#### 1. Trespass/Property Damage

The Cobles argue that Defendants had no right to direct or allow the loan collectors to enter their property without a court order. This is based on a Washington Court of Appeals opinion holding that a landlord owes a tenant ten days notice before a right of entry is triggered. *Olin v. Goehler*, 694 P.2d 1129, 1131 (Wash. Ct. App. 1985). While Defendants properly point out that this case does not involve a landlord/tenant dispute, deeds of trust may implicitly incorporate the same ten-day notice requirement. Paragraph nine (9) of the Cobles' original deeds of trust allows the lender to secure the property should "[b]orrower fail[] to perform the covenants and agreements contained." Dkt. No. 29, Ex 1 at 7. "Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up

Page 17

doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned off." *Id.*

However, such action must be "reasonable." As there remains a genuine dispute as to whether or not the actions taken by Defendant SunTrust in securing the rental property were "reasonable," the Court **DENIES** Defendants' motion for summary judgment on Plaintiffs' trespass and property damage claim against Defendant SunTrust as it relates to the rental property. As there is no genuine dispute that SunTrust was solely responsible for changing the locks on the rental, the Court **GRANTS** summary judgment on the trespass and property damage claim as it pertains to Defendants MERS and Fannie Mae. Plaintiffs did not raise their trespass/property damage claim against Freddie Mac.

#### 2. Invasion of Privacy

Defendant SunTrust's primary legal argument against the claim for invasion of privacy is that such a claim requires invasion of one's private space and that the Cobles did not occupy the rental property. However, occupancy is not an element of the tort. Intrusion upon seclusion is the "intentional[] intru[sion], physical[] or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . .if the intrusion would be highly offensive to a reasonable person. *Mark v. Seattle Times*, 635 P.2d 1081, 1094 (Wash. 1981) (quoting Restatement (Second) of Torts § 652B (1977)). A plaintiff can show intrusion not only upon his person but also upon "his private affairs or concerns." The Restatement commentators include observation of one's private banking records,



-9-

as well as entrance to "the plaintiffs home, even though no one was there at the time" as meeting the elements of an intrusion claim. Restatement (Second) of Torts § 652B, Reporter's Note (1977).

Page 18

As there remains a genuine dispute of material fact as to whether the actions of Defendant SunTrust's loan collectors constituted intrusion of the Cobles' seclusion in their rental property, the Court **DENIES** the motion for summary judgment on this claim as to Defendant SunTrust, but **GRANTS** summary judgment with respect to Defendants MERS and Fannie Mae.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. No. 92) is **GRANTED** in part. All claims asserted against moving Defendants are dismissed with prejudice save Plaintiffs' claims for trespass, destruction of property, and invasion of privacy against Defendant SunTrust as it pertains to Plaintiffs' rental property. Defendants MERS, Freddie Mac, and Fannie Mae are hereby **DISMISSED** from the above-captioned matter.

DATED this 18th day of February 2015.

/s/
John C. Coughenour
UNITED STATES DISTRICT JUDGE

---------

Footnotes:

1. The Cobles mistakenly allege that SunTrust was required to transfer physical custody of the note at this time, as discussed, *infra. See* Dkt. No. 111, pp. 9-10.

2. Claim asserted against Defendants MERS, SunTrust, and Fannie Mae, but not Freddie Mac.

3. Claim asserted against Defendants MERS, Suntrust, and Fannie Mae, but not Freddie Mac.

4. Claim asserted against all moving Defendants.

5. *Available at* http://www.commerce.wa.gov/Documents/2015%20Financial%20Institutions%20Exempt%20from%20Mediation%202-6-2015.pdf (last visited February 12, 2015).

6. The Court considers the evidence contained in Dkt. No. 113 in the light most favorable to the non-moving party.

7. SunTrust had the power to obtain the note at any time. Dkt. No. 92, p. 15.

8. Plaintiffs rely on *McDonald v Onewest Bank, FSB* which denied constructive possession based on specific facts. 929 F. Supp. 2d 1079, 1087 (W.D. Wash. 2013). In *McDonald*, this Court recognized that "actual physical possession" could still be maintained "through an agent" under the DTA. *Id.* at 1089, n. 6.

9. In the event that the Washington Supreme Court decides a pending motion for reconsideration in the *Lyons* case differently, Plaintiffs may appeal this order solely on the issue of whether SunTrust is a beneficiary.

---------

