557179163655

## LOST NOTE AFFIDAVIT

STATE OF FLORIDA
COUNTY OF PALM BEACH

BEFORE me, personally appeared M. Johnson who, being of lawful age and after being first duly sworn, deposes and says:

1. I am an Authorized Signer of Ocwen Loan Servicing, LLC ("Ocwen"), servicer for Deutsche Bank National Trust Company, as Trustee for Ixis Real Estate Capital Trust 2006-HE3 Mortgage Pass Through Certificates, Series 2006-HE3, Plaintiff in this action. In this capacity I have personal knowledge of the facts and matters stated herein based on my review of the business records defined below, and I am authorized to execute this Affidavit on behalf of Ocwen.

2. The information contained in this affidavit is based on my personal knowledge from my review of the information contained in the records maintained by Ocwen. The records referenced or summarized herein constitute records or data compilations ("the Records") of transactions ("the Transactions") relating to the servicing of the mortgage loan at issue in this foreclosure action. The Records were made at or near the indicated time based on information transmitted by, or from a person with knowledge of the Transactions. The Records are kept in the course of Ocwen's regularly conducted business activity. In the course of my regular job duties I have access to and am familiar with these Records, and I reviewed and relied upon these Records in executing this Affidavit.

DBNTC000606

3. This Lost Note Affidavit is made in connection with a promissory note ("Note"), dated May 1, 2006, in which JAMES P MOYNIHAN ("Borrower") promised to pay to New Century Mortgage Corporation the sum of $360,000.00 (the "Loan"). A true and correct copy of the Note is attached hereto as Exhibit A.

4. The Note was then endorsed to [Blank].  A true and correct copy of all allonges and endorsements on the Note are attached as part of Exhibit A.

5. According to the Records attached hereto as Exhibit B, Plaintiff was in possession of the Note when loss of possession occurred.

6. According to the Records, on April 1, 2016, a diligent search for the original Note was conducted. After conducting the search, the original Note could not be located and Plaintiff cannot reasonably obtain possession of the original Note.

7. The original Note has been inadvertently lost, misplaced, or destroyed, or is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

8. The original Note is not in the custody and control of the Plaintiff.

9. According to the Records, the Note has not been paid, satisfied, pledged, transferred or lawfully seized.

10. Plaintiff hereby agrees to indemnify Borrowers against loss that might occur by reason of a claim by another person to enforce or foreclose under the Note.

DBNTC000607

Under penalties of perjury, I declare that I have read the foregoing Affidavit and that the facts stated in it are true and correct.

Dated:     **SEP 1 2 2016**

Signature: _____

Print Name: M. Johnson

Title: Authorized Signer

Ocwen Loan Servicing, LLC, as servicer for

Deutsche Bank National Trust Company, as Trustee for Ixis Real Estate Capital Trust 2006-HE3 Mortgage Pass Through Certificates, Series 2006-HE3

STATE OF FLORIDA
COUNTY OF PALM BEACH

This record was signed or attested before me this 12th day of September , 2016 , by M. Johnson, who is personally known to me.

Notary Public State of Florida
Yamile P Shields
My Commission FF 996066
Expires 05/25/2020

Signature of Notary Public

Yamile P. Shields

DBNTC000608

# Exhibit A

DBNTC000609

# ADJUSTABLE RATE NOTE

**(LIBOR Six Month Index (as Published in *The Wall Street Journal*) - Rate Caps)**
2 YEAR RATE LOCK, 5 YEAR INTEREST ONLY PERIOD

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT.**

| **May 1, 2006** | **LOWELL** | **Massachusetts** |
|---|---|---|
| (Date) | (City) | (State) |

### 619-621 STEVENS STREET, LOWELL, MA  01851

(Property Address)

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **360,000.00** (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is **New Century Mortgage Corporation**.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of **9.013%**. The interest rate I will pay will change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay interest by making a payment every month. Beginning on the Amortization Start Date, I will pay principal each month in addition to interest.

I will make my monthly payment on the first day of each month beginning on **June 1, 2006** .

I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If, on **05/01/2036** , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **18400 Von Karman, Suite 1000, Irvine, CA 92612** or at a different place if required by the Note Holder.

NCMC
Fixed/ ARM Six Month LIBOR
Interest Only Note (Multistate)
RE-440 (051005)

1007448372

DBNTC000610

### (B) Amount of My Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $2,703.90 . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### (D) Withholding

If I am a non-resident alien, I understand that all payments due hereunder shall be paid without reduction for any taxes, deductions or withholding of any nature. If such tax, deduction or withholding is required by any law to be made from any payment to the Note Holder, I shall continue to pay this Note in accordance with the terms hereof, such that the Note Holder will receive such amount as it would have received had no such tax, deduction or withholding been required.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of **May, 2008** and on the same day of every 6th month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date."

### (B) The Index

Beginning with the first Interest Rate Change Date, my interest rate will be based on an Index plus a margin. The "Index" is the average of interbank offered rates for six-month dollar deposits in the London market ("LIBOR"), as published in *The Wall Street Journal* "Money Rates" Table. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Interest Rate Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

On each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding **Five And Ninety-five Hundredth(s)** percentage points (**5.950%**) to the Current Index. The Note Holder will then round this figure to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Rate Change Date.

**(i) Interest-Only Period.** The "Interest-Only Period" is the period from the date of this Note through **May 1, 2011**, called the "Amortization Start Date." During the Interest-Only Period, my monthly payments will only pay the interest I owe. During the Interest-Only Period, the Note Holder will calculate the amount of my monthly payment to be one-twelfth (1/12th) of one (1) year's interest at the then applicable interest rate. The result of this calculation will be the amount of my monthly payment until changed.

NCMC
Fixed/ ARM Six Month LIBOR
Interest Only Note (Multistate)
RE-440 (051005)

Page 2 of 5

1007448372

DBNTC000611

(ii) **Amortization Period.** Beginning on the Amortization Date my monthly payments will include principal. Starting on the Amortization Start Date and continuing until the Maturity Date, on each Interest Rate Change Date the Note Holder will calculate the amount of the monthly payment that would be sufficient to fully repay the remaining unpaid principal in equal monthly payments by the Maturity Date at the new interest rate, assuming, for purposes of each calculation, that the interest rate did not change again. The result of this calculation will be the new amount of my monthly payment until the next Interest Rate Change Date.

### (D) Limit on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **10.513** % or less than **9.013** %. Thereafter, my interest rate will never be increased or decreased on any single Interest Rate Change Date by more than one and one half percentage points (1.5%) from the rate of interest I have been paying for the preceding month. My interest rate will never be greater than **16.013** % or less than **9.013**%.

### (E) Effective Date of Changes

My new interest rate will become effective on each Interest Rate Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Rate Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment at least 25 days before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note and to pay the interest then accruing at the Note rate as of the date my prepayments are applied. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

NCMC
Fixed/ ARM Six Month LIBOR
Interest Only Note (Multistate)
RE-440 (051005)

Page 3 of 5

1007448372

DBNTC000612

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be **3.000%** or $5.00, whichever is greater of my overdue monthly payment.  I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.  That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note.  The Note Holder may enforce its rights under this Note against each person individually or against all of us together.  This means that any one of us may be required to pay all of the amount owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor, and further waive all relief under any valuation and appraisement laws.  "Presentment" means the right to

NCMC
Fixed/ ARM Six Month LIBOR
Interest Only Note (Multistate)
RE-440 (051005)

Page 4 of 5

1007448372

DBNTC000613

require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. GOVERNING LAW - SECURED NOTE

This Note is governed by federal law and the law of the jurisdiction in which the property encumbered by the Security Instrument (as defined below) is located. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note protects the Note Holder from possible losses which might result if I do not keep the promises which I make in the Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

### CAUTION

### IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS NOTE BEFORE YOU SIGN IT.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ - Borrower          _____ - Borrower
JAMES P MOYNIHAN

_____ - Borrower          _____ - Borrower

_____ - Borrower          _____ - Borrower

_____ - Borrower          _____ - Borrower

(Sign Original Only)

NCMC
Fixed/ ARM Six Month LIBOR
Interest Only Note (Multistate)          Page 5 of 5          1007448372
RE-440 (051005)

DBNTC000614

Pay to the order of, without recourse

New Century Mortgage Corporation

By: _____

Steve Nagy

V.P. Records Management

DBNTC000615

# Exhibit B

DBNTC000616

MORGAN STANLEY ABS CAPITAL I INC.,

as Depositor,

WELLS FARGO BANK, NATIONAL ASSOCIATION,

as Master Servicer, Backup Servicer and Securities Administrator,

SAXON MORTGAGE SERVICES, INC.

as Servicer,

MASTER FINANCIAL, INC.,

as Servicer,

IXIS REAL ESTATE CAPITAL INC.,

as Unaffiliated Seller,

and

DEUTSCHE BANK NATIONAL TRUST COMPANY,

as Trustee and Custodian.

POOLING AND SERVICING AGREEMENT

Dated as of September 1, 2006

IXIS REAL ESTATE CAPITAL TRUST 2006-HE3

MORTGAGE PASS-THROUGH CERTIFICATES,
SERIES 2006-HE3

DBNTC000617



DBNTC000618



**Archived Comments Detail Inquiry**

Date: 10/14/2011   4:12:30 PM   By: dsouzvin  Vini Jenifer D'souza   Gen By: User

Alias: BLREQ   Gen Mthd: Manual   ☑ Rpt in Comm Log

Class: TIME   ☐ View as Warning

Std Cde: TIME   Seq: 0817   ☐ Disp in Std Area

```
This is a request for an Original Collateral Document
(1)

Bailee Letter requested by: agiarrusso@acdlaw.com

Document(s) Required: Promissory note(Who holds possession of the original)

Send Document(s) To: agiarrusso@acdlaw.com

;  Amy E. Ciarrusso
Litigation Paralegal

Ablitt|Scofield, PC
304 Cambridge Road
Woburn, MA 01801-6040
Phone: 781-246-8995
Fax: 781-246-8994

  Details:  as per atty Amy Ciarrusso [mailto:agiarrusso@acdlaw.com]
```



**Archived Comments Detail Inquiry**

Date: 11/21/2011   4:03:34 PM   By: kingcody  Cody King   Gen By: User

Alias: BDSFC   Gen Mthd: Manual   ☑ Rpt in Comm Log

Class: TIME   ☐ View as Warning

Std Cde: TIME   Seq: 0825   ☐ Disp in Std Area

```
Bailee documents sent to foreclosure council
(1);  Original Note forwarded to Contract Management so the Note can be endorsed.

Per FC Attorney:
Ablitt|Scofield, PC
304 Cambridge Road
Woburn, MA 01801-6040
```

71791636



O C W E N

## ATTORNEY BAILEE

November 21, 2011

**Ablitt|Scofield, PC**
**304 Cambridge Road**
**Woburn, MA 01801-6040**

Servicer:     Ocwen Loan Servicing
              2001 Australian Ave, Bay 1
              Riviera Beach, Florida 33404
              Attn: Cody King
              Telephone: 561-682-7863
              Fax: 561-682-8124

**James Moynihan**
**619-621 Stevens St.**
**Lowell, MA 01851**

**71791636**

Dear Sir or Madam:

     Ocwen Loan Servicing (the "Servicer") has asked you to commence and prosecute a foreclosure action on the mortgage loan listed above (the "Mortgage Loan"). In connection with such foreclosure activities, one or more of the documents indicated below evidencing or otherwise relating to the Mortgage Loan (the "Documents") have previously been delivered to you:

☒   **Note**

    ☒   **Original**
    ☐   **Copy**
    ☐   **Certified True Copy**
    ☐   **Chain of Endorsements:**

        First: _____ to_____
        Second: _____ to_____
        Third: _____ to_____

☐   **Allonge(s):**

        First: _____ to_____
        Second: _____ to_____
        Third: _____ to_____

1

DBNTC000620

71791636

☐ **Lost Note Affidavit**
   ☐ Copy of Note attached
☐ **Security Instrument or Mortgage**

   ☐ Original
   ☐ Recorded Copy
      Court Clerk or County Certified   ☐ Y   ☐ N
   ☐ Unrecorded Copy

☐ **Mortgage/ Security Instrument Assignment(s)**

   First: _____ to _____

   ☐ Recorded Copy
      Court Clerk or County Certified   ☐ Y   ☐ N
   ☐ Unrecorded Copy
   Second: _____ to _____

   ☐ Recorded Copy
      Court Clerk or County Certified   ☐ Y   ☐ N
   ☐ Unrecorded Copy
   Third: _____ to _____

   ☐ Recorded Copy
      Court Clerk or County Certified   ☐ Y   ☐ N
   ☐ Unrecorded Copy

☐ **Modification Documents**

   ☐ Original
   ☐ Recorded Copy
      Court Clerk or County Certified   ☐ Y   ☐ N
   ☐ Unrecorded Copy

☐ **Title Policy**

   ☐ Final Policy
      ☐ Original
      ☐ Copy
   ☐ Commitment
      ☐ Marked Up   ☐ Y   ☐ N
   ☐ Attorney's Abstract or Opinion of Title

☐ **Other** (List):

   ☐ _____
   ☐ _____
   ☐ _____

2

DBNTC000621

71791636

**IXIS RE CAPITAL TRUST 2006-HE3** (The "Owner") is the owner of the subject mortgage loan and the Documents.

By signing this letter agreement below where indicated, you confirm that you are currently holding the Documents on behalf of the Servicer and the Owner, and shall only act in accordance with either the Servicer's or the Owner's instructions with regard to the Documents,.

You agree that the Servicer and the Owner are the intended beneficiaries of this letter agreement and that each such beneficiary has the right to enforce this letter agreement.

Very truly yours,

Ocwen Loan Servicing

By: _____
Title: Sr. Document Control Specialist

I acknowledge receipt of the Documents as listed above and notice of the security interests therein stated above, confirm the certifications made by me above and agree to act as bailee for the exclusive benefit of the Servicer and the Owner on the terms set forth above and to otherwise comply with the terms of this letter agreement.

**Ablitt|Scofield, PC**

By: _____
Print Name:
For: Ablitt|Scofield, PC
Date:

In any event in which the document (s) is/are not needed, it is imperative they be returned to Ocwen Loan Servicing, ATTN: Vault, at 2001 Australian Ave, Bay, Riviera Beach, Florida 33404

Acknowledge receipt of the said document(s) by faxing to 561-682-8124

3

DBNTC000622

# ADJUSTABLE RATE NOTE

**(LIBOR Six Month Index (as Published in *The Wall Street Journal*) - Rate Caps)**
2 YEAR RATE LOCK, 5 YEAR INTEREST ONLY PERIOD

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT.**

| | | |
|---|---|---|
| May 1, 2006 | **LOWELL** | **Massachusetts** |
| (Date) | (City) | (State) |

**619-621 STEVENS STREET, LOWELL, MA  01851**

(Property Address)

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **360,000.00** (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is **New Century Mortgage Corporation.**

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of **9.013%.** The interest rate I will pay will change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay interest by making a payment every month. Beginning on the Amortization Start Date, I will pay principal each month in addition to interest.

I will make my monthly payment on the first day of each month beginning on **June 1, 2006 .**

I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If, on **05/01/2036 ,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **18400 Von Karman, Suite 1000, Irvine, CA 92612** or at a different place if required by the Note Holder.

NCMC
Fixed/ ARM Six Month LIBOR
Interest Only Note (Multistate)
RE-440 (051005)

Page 1 of 5

1007448372

DBNTC000623

**(B) Amount of My Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. **$2,703.90** . This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**(D) Withholding**

If I am a non-resident alien, I understand that all payments due hereunder shall be paid without reduction for any taxes, deductions or withholding of any nature. If such tax, deduction or withholding is required by any law to be made from any payment to the Note Holder, I shall continue to pay this Note in accordance with the terms hereof, such that the Note Holder will receive such amount as it would have received had no such tax, deduction or withholding been required.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of **May, 2008** and on the same day of every 6th month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date."

**(B) The Index**

Beginning with the first Interest Rate Change Date, my interest rate will be based on an Index plus a margin. The "Index" is the average of interbank offered rates for six-month dollar deposits in the London market ("LIBOR"), as published in *The Wall Street Journal* "Money Rates" Table. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Interest Rate Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

On each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding **Five And Ninety-five Hundredth(s)** percentage points (**5.950%**) to the Current Index. The Note Holder will then round this figure to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Rate Change Date.

(i) Interest-Only Period. The "Interest-Only Period" is the period from the date of this Note through **May 1, 2011**, called the "Amortization Start Date." During the Interest-Only Period, my monthly payments will only pay the interest I owe. During the Interest-Only Period, the Note Holder will calculate the amount of my monthly payment to be one-twelfth (1/12th) of one (1) year's interest at the then applicable interest rate. The result of this calculation will be the amount of my monthly payment until changed.

**(ii) Amortization Period.** Beginning on the Amortization Date my monthly payments will include principal. Starting on the Amortization Start Date and continuing until the Maturity Date, on each Interest Rate Change Date the Note Holder will calculate the amount of the monthly payment that would be sufficient to fully repay the remaining unpaid principal in equal monthly payments by the Maturity Date at the new interest rate, assuming, for purposes of each calculation, that the interest rate did not change again. The result of this calculation will be the new amount of my monthly payment until the next Interest Rate Change Date.

### (D) Limit on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **10.513** % or less than **9.013** %. Thereafter, my interest rate will never be increased or decreased on any single Interest Rate Change Date by more than one and one half percentage points (1.5%) from the rate of interest I have been paying for the preceding month. My interest rate will never be greater than **16.013** % or less than **9.013%**.

### (E) Effective Date of Changes

My new interest rate will become effective on each Interest Rate Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Rate Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment at least 25 days before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note and to pay the interest then accruing at the Note rate as of the date my prepayments are applied. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

NCMC
Fixed/ ARM Six Month LIBOR
Interest Only Note (Multistate)
RE-440 (051005)

Page 3 of 5

1007448372

DBNTC000625

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **3.000%** or $5.00, whichever is greater of my overdue monthly payment. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amount owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor, and further waive all relief under any valuation and appraisement laws. "Presentment" means the right to

NCMC
Fixed/ ARM Six Month LIBOR
Interest Only Note (Multistate)
RE-440 (051005)

Page 4 of 5

1007448372

DBNTC000626

require the Note Holder to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.  GOVERNING LAW - SECURED NOTE

This Note is governed by federal law and the law of the jurisdiction in which the property encumbered by the Security Instrument (as defined below) is located.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.**  If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

### CAUTION

### IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS NOTE BEFORE YOU SIGN IT.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

| | |
|---|---|
| JAMES P MOYNIHAN                - Borrower | - Borrower |
| - Borrower | - Borrower |
| - Borrower | - Borrower |
| - Borrower | - Borrower |

(Sign Original Only)

NCMC
Fixed/ ARM Six Month LIBOR
Interest Only Note (Multistate)
RE-440 (051005)

Page 5 of 5

1007448372

DBNTC000627

71791636



O C W E N

**ATTORNEY BAILEE**

November 21, 2011

**Ablitt|Scofield, PC**
**304 Cambridge Road**
**Woburn, MA 01801-6040**

Servicer:    Ocwen Loan Servicing
2001 Australian Ave, Bay 1
Riviera Beach, Florida 33404
Attn: Cody King
Telephone: 561-682-7863
Fax: 561-682-8124

**James Moynihan**
**619-621 Stevens St.**
**Lowell, MA 01851**

**71791636**

Dear Sir or Madam:

    Ocwen Loan Servicing (the "Servicer") has asked you to commence and prosecute a foreclosure action on the mortgage loan listed above (the "Mortgage Loan"). In connection with such foreclosure activities, one or more of the documents indicated below evidencing or otherwise relating to the Mortgage Loan (the "Documents") have previously been delivered to you:

  ☒    Note

      ☒    **Original**
      ☐    **Copy**
      ☐    **Certified True Copy**
      ☐    **Chain of Endorsements:**

            **First:** _____ **to** _____
            **Second:** _____ **to** _____
            **Third:** _____ **to** _____
      ☐    **Allonge(s):**

            **First:** _____ **to** _____
            **Second:** _____ **to** _____
            **Third:** _____ **to** _____

DBNTC000628

71791636

☐ **Lost Note Affidavit**
   ☐ **Copy of Note attached**
☐ **Security Instrument or Mortgage**

   ☐ **Original**
   ☐ **Recorded Copy**
     **Court Clerk or County Certified** ☐Y ☐N
   ☐ **Unrecorded Copy**

☐ **Mortgage/ Security Instrument Assignment(s)**

**First:** _____to_____

   ☐ **Recorded Copy**
     **Court Clerk or County Certified** ☐Y ☐N
   ☐ **Unrecorded Copy**
**Second:** _____to_____

   ☐ **Recorded Copy**
     **Court Clerk or County Certified** ☐Y ☐N
   ☐ **Unrecorded Copy**
**Third:** _____to_____

   ☐ **Recorded Copy**
     **Court Clerk or County Certified** ☐Y ☐N
   ☐ **Unrecorded Copy**

☐ **Modification Documents**

   ☐ **Original**
   ☐ **Recorded Copy**
     **Court Clerk or County Certified** ☐Y ☐N
   ☐ **Unrecorded Copy**

☐ **Title Policy**

   ☐ **Final Policy**
     ☐ **Original**
     ☐ **Copy**
   ☐ **Commitment**
     ☐ **Marked Up** ☐Y ☐N
   ☐ **Attorney's Abstract or Opinion of Title**

☐ **Other** (List):

   ☐ _____
   ☐ _____
   ☐ _____

2

DBNTC000629

71791636

**IXIS RE CAPITAL TRUST 2006-HE3** (The "Owner") is the owner of the subject mortgage loan and the Documents.

By signing this letter agreement below where indicated, you confirm that you are currently holding the Documents on behalf of the Servicer and the Owner, and shall only act in accordance with either the Servicer's or the Owner's instructions with regard to the Documents,.

You agree that the Servicer and the Owner are the intended beneficiaries of this letter agreement and that each such beneficiary has the right to enforce this letter agreement.

Very truly yours,

Ocwen Loan Servicing

By: _____

Title: Sr. Document Control Specialist

I acknowledge receipt of the Documents as listed above and notice of the security interests therein stated above, confirm the certifications made by me above and agree to act as bailee for the exclusive benefit of the Servicer and the Owner on the terms set forth above and to otherwise comply with the terms of this letter agreement.

**Ablitt|Scofield, PC**

By: _____

Print Name:

For: Ablitt|Scofield, PC

Date:

In any event in which the document (s) is/are not needed, it is imperative they be returned to Ocwen Loan Servicing, ATTN: Vault, at 2001 Australian Ave, Bay, Riviera Beach, Florida 33404

Acknowledge receipt of the said document(s) by faxing to 561-682-8124

3

DBNTC000630