# Exhibit A

NOTICE:  Summary decisions issued by the Appeals Court pursuant to its rule 1:28, as amended by 73 Mass. App. Ct. 1001 (2009), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

16-P-1467

EVERBANK

<u>vs</u>.

GERARDO CHACON.

<u>MEMORANDUM AND ORDER PURSUANT TO RULE 1:28</u>

On appeal from a judgment entered in the Housing Court in a summary process case, awarding possession of his home to his former lender EverBank, Gerardo Chacon[1] asks us to weigh in on a particularly muddy area of bankruptcy law:  what it means for a Chapter 7 debtor to state an intention, pursuant to 11 U.S.C. § 521(a)(2) (2012), to "surrender" property of the bankruptcy estate that secures a debt listed on the debtor's schedule of assets and liabilities.  In a detailed and thoughtful series of rulings on cross motions for summary judgment, the judge ultimately concluded that Chacon, while in Chapter 7 bankruptcy, had "surrendered" the property to EverBank and so could not contest the validity of EverBank's foreclosure and its

---

[1] Gerardo Chacon's brother Germando Chacon was a codefendant below but did not appeal.  We therefore use the name Chacon herein to refer solely to Gerardo Chacon.

consequent superior right to possession.  We find it necessary
to reverse that portion of the judgment.

Background.  EverBank held Chacon's home mortgage, which
was federally insured and thus subject to certain regulations
issued by the United States Department of Housing and Urban
Development (HUD).[2]  After Chacon defaulted on the mortgage,
EverBank foreclosed, acquired the property at the foreclosure
sale, and then brought this summary process action against
Chacon.  Chacon defended on the ground that EverBank had failed
to comply with a condition precedent to foreclosure, imposed by
HUD regulations and incorporated by reference into the mortgage,
requiring that, in the event of a payment default, "[t]he
mortgagee must have a face-to-face interview with the mortgagor,
or make a reasonable effort to arrange such a meeting," before
commencing foreclosure proceedings or acquiring title to the
property.  24 C.F.R. § 203.604(b) (2016).  See 24 C.F.R.
§ 203.500 (2016).  An obvious purpose of such a face-to-face
interview is to discuss a repayment plan, modification of the
mortgage, or other measures that may avoid the need for
foreclosure and allow the mortgagor to remain in his or her
residence and repay the loan, thus minimizing the need for HUD,

---

[2] Chacon states, and EverBank does not dispute, that the mortgage
was insured under a Federal Housing Administration program.

as insurer, to pay losses to mortgagees.  See 24 C.F.R.
§§ 203.501, 203.600-203.616 (2016).

The motion judge initially agreed with Chacon, ruling that
EverBank's noncompliance with the regulation rendered its
foreclosure on Chacon's home void ab initio, so that EverBank
had no right of possession superior to Chacon's.[3]  On EverBank's
motion for reconsideration, however, the judge -- while
reiterating that as a general matter a HUD-insured mortgagee's
noncompliance with the regulation would invalidate a foreclosure
and thus be a defense to a summary process action[4] -- ruled that
Chacon was no longer entitled to raise that defense.  The judge
reasoned that in the Chapter 7 proceeding, "Chacon had elected
to surrender any interest he had in the mortgaged property to
EverBank," and so the doctrines of waiver and judicial estoppel
now barred Chacon from contesting the validity of the

---

[3] See Wells Fargo Bank, N.A. v. Cook, 87 Mass. App. Ct. 382, 385-386, 389 (2015) (failure to comply with applicable HUD face-to-face interview regulation would render foreclosure invalid); Jose v. Wells Fargo Bank, N.A., 89 Mass. App. Ct. 772, 774 & n.3 (2016) (same, citing Cook).

[4] The judge rejected EverBank's arguments that various exemptions to the regulation, concerning the location of EverBank's offices and Chacon's earlier execution of a repayment plan, relieved EverBank of the duty to comply with the regulation.  Also, in a decision on Chacon's motion for further reconsideration, the judge noted but did not resolve EverBank's argument that meetings between its counsel and Chacon's during the bankruptcy proceeding constituted compliance with the regulation's face-to-face meeting requirement.  On appeal, EverBank does not argue any of these issues as alternative grounds for affirmance, and so we do not discuss them further.

foreclosure.  Chacon appeals the resulting judgment awarding possession to EverBank.[5]

Discussion.  We first address and reject EverBank's two threshold procedural arguments for affirmance.  We then explain why Chacon's election of the Chapter 7 "surrender" option did not bar him from raising in Housing Court the defense that noncompliance with the HUD regulation rendered the foreclosure invalid -- a defense that the judge ruled was, if available, sufficient to order judgment for Chacon.

a.  Timeliness.  Although the judge and the Appeals Court Clerk's Office deemed this appeal timely filed, EverBank continues to assert that the appeal is untimely.  To the extent that the order on our court docket does not finally dispose of any questions of timeliness, we conclude, substantially for the reasons set forth in Chacon's reply brief, that the appeal was timely.

b.  Res judicata.  EverBank argues that prior judgments issued by the United States Bankruptcy Court for the District of Massachusetts and the Land Court preclude Chacon from now challenging the validity of the foreclosure in this summary

---

[5] The judgment dismissed EverBank's claim for use and occupancy, and Everbank did not cross-appeal.

process action.  We conclude that neither issue preclusion[6] nor

claim preclusion[7] bars Chacon's defense here.

    i.  <u>Bankruptcy Court proceeding</u>.  We reject EverBank's

argument that the Bankruptcy Court's allowance of EverBank's

motion for relief under 11 U.S.C. § 362(e) (2012) from the

automatic bankruptcy stay precludes Chacon from challenging the

validity of the mortgage foreclosure in the summary process

proceeding.  The Housing Court judge correctly concluded that no

such preclusion applied, because a Bankruptcy Court judge's

decision to lift the stay under § 362(e) results from a limited,

expedited hearing.  See <u>Grella</u> v. <u>Salem Five Cent Sav. Bank</u>, 42

F.3d 26, 31-35 (1st Cir. 1994).  It is not an adversary

proceeding, does not involve a full adjudication on the merits,

and determines no substantive claims, defenses, or counterclaims

underlying the validity of a lien.  See <u>ibid</u>.  A fortiori, it

can have no issue or claim preclusive effect with regard to the

---

[6] "The doctrine of issue preclusion provides that when an issue has been actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties whether on the same or different claim." <u>Jarosz</u> v. <u>Palmer</u>, 436 Mass. 526, 530-531 (2002) (quotation omitted).

[7] "The invocation of claim preclusion requires three elements: (1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits." <u>Kobrin</u> v. <u>Board of Registration in Med</u>., 444 Mass. 837, 843 (2005) (quotation omitted).  Where claim preclusion applies, it "bars further litigation of all matters that were or should have been adjudicated in the [earlier] action." <u>Heacock</u> v. <u>Heacock</u>, 402 Mass. 21, 23 (1988).

validity of the process used to foreclose upon a lien (here, the mortgage) <u>after</u> the stay is lifted.

    ii.  <u>Land Court proceeding</u>.  We also reject Everbank's argument as to the preclusive effect of the Land Court judge's preforeclosure judgment that Chacon was not entitled to protection under the Servicemembers Civil Relief Act (SCRA). See 50 U.S.C. app. § 501 et seq. (2012); St. 1943, c. 57, as amended through St. 1998, c. 142.  That Land Court judgment made no determination whatsoever as to the parties' rights and obligations under the mortgage itself.  See <u>HSBC Bank USA, N.A.</u> v. <u>Matt</u>, 464 Mass. 193, 196-197 (2013) (SCRA proceedings address limited subject matter and are neither part of nor necessary to foreclosure process).  Indeed, a party not entitled to relief under the SCRA is not even permitted to appear in a Land Court SCRA proceeding, see <u>id</u>. at 198-199, much less assert a preemptive defense to an anticipated foreclosure.  The validity of the foreclosure was not actually litigated, and therefore issue preclusion does not apply.  And because the validity of the foreclosure was not a claim that could, let alone "should have been adjudicated in the [earlier] action," claim preclusion does not apply.  <u>Heacock</u> v. <u>Heacock</u>, 402 Mass. 21, 23 (1988).

    c.  <u>Effect of the Chapter 7 "surrender."</u>  We first review the applicable Chapter 7 bankruptcy framework and the relevant events in Chacon's Chapter 7 proceeding.  If an individual

debtor files a schedule of assets and liabilities that includes debts secured by property of the estate, then the debtor must file "a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property."  11 U.S.C. § 521(a)(2)(A).  The debtor is given a limited time to "perform his intention," 11 U.S.C. § 521(a)(2)(B).  But "nothing in [the provisions just quoted] shall alter the debtor's or the [bankruptcy] trustee's rights with regard to such property under this title."  11 U.S.C. § 521(a)(2).[8]

These provisions must be read together with the requirement in the same section that the debtor "surrender to the [bankruptcy] trustee all property of the estate."  11 U.S.C. § 521(a)(4).  The trustee, after notice and hearing, "may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."  11 U.S.C. § 554(a) (2012).  And, "[u]nless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the

---

[8] The provision contains an exception for personal property that is not relevant here.  11 U.S.C. § 521(a), citing 11 U.S.C. § 362(h).

closing of a case is abandoned to the debtor."  11 U.S.C.
§ 554(c).

Chacon initially filed for Chapter 13 bankruptcy; he listed
his home as securing a claim of $420,868, but as having a value
of only $318,500.  EverBank sought and obtained relief from the
automatic stay that barred it from foreclosing upon its mortgage
during the bankruptcy.  Chacon then converted his bankruptcy
case to Chapter 7 and timely filed a statement of intention to
"surrender" the property.  Because EverBank's secured claim
exceed the property's value (putting the property "under
water"), and because the bankruptcy estate included no other
nonexempt assets that were available to pay Chacon's
liabilities, the trustee treated the case as a "no asset" case,
"abandoned" the property, and closed the case in late 2011.

This resulted in the discharge (under 11 U.S.C.
§ 524[a][2]) of Chacon's personal liability on the note, but did
not impair EverBank's ability to proceed in rem by foreclosing
on the mortgage.  See Johnson v. Home State Bank, 501 U.S. 78,
83 (1991) ("[A] creditor's right to foreclose on the mortgage
survives or passes through the bankruptcy," unaffected by
discharge of in personam liability).  Some months later,
EverBank, without seeking a face-to-face interview with Chacon
pursuant to the HUD regulation, commenced the foreclosure,
acquired the property, and sought to evict Chacon.

i.  <u>Conclusions of the Housing Court judge</u>.  The Housing
Court judge concluded that Chacon "surrendered" the property "to
EverBank," that this was "a condition for obtaining a Chapter 7
discharge of his mortgage loan," and that "the bankruptcy court
issued its Chapter 7 bankruptcy discharge [of Chacon's personal
liability] in reliance on Chacon's explicit statement of his
intentions to <u>surrender</u> the property."  On this basis, the judge
ruled that "Chacon waived any right he may have had to assert
the non-compliance with [the HUD regulation] as a defense in
this summary process action," and that the doctrine of judicial
estoppel now barred Chacon from contesting EverBank's right to
foreclose.[9]

We are constrained to disagree.  We first note that nothing
in Chacon's statement of intention to surrender, or in any of

---

[9] The judge also concluded that after the discharge, Chacon could
not seek to enforce the HUD regulation's face-to-face interview
requirement, because for EverBank to seek such an interview
would have violated the Bankruptcy Code's permanent injunction
against creditors taking in personam actions to collect
discharged debts.  11 U.S.C. § 524(a)(2).  The judge later
acknowledged, however, on Chacon's motion for further
reconsideration, that the Bankruptcy Code includes a specific
exception allowing a secured creditor, even after the discharge
of a debt owed on a principal residence, to "seek[] or obtain[]
periodic payments associated with a valid security interest in
lieu of pursuit of in rem relief to enforce the lien."  11
U.S.C. § 524(j).  Although, as the judge noted, § 524(j) does
not impose an affirmative obligation on a creditor to seek to
meet to discuss alternatives to foreclosure, it remains the case
that such an obligation arises from the HUD regulation itself,
as incorporated in the mortgage, before a foreclosure may
validly be commenced.

the other bankruptcy filings in the record, or in the statute
governing such statements, indicated that Chacon stated an
intention to surrender the property "to EverBank."  Chacon's
statement said merely that the "[p]roperty will be
[s]urrendered," without saying to whom, and 11 U.S.C. § 521
(a)(4) requires that the debtor "surrender <u>to the trustee</u> all
property of the estate" (emphasis added).  Moreover, the trustee
determined that the estate should "abandon" the property without
distributing or otherwise administering it, and absent a
contrary Bankruptcy Court order (there was none here), such
property abandoned "at the time of the closing of a case is
abandoned <u>to the debtor</u>" (emphasis added).  11 U.S.C. § 554(c).

     Nor was the discharge of Chacon's personal liability in any
way conditioned upon, or entered by the Bankruptcy Court in
reliance upon, his statement of intention to surrender the
property.  See <u>In re Ryan</u>, 560 B.R. 339, 351 (Bankr. D. Haw.
2016).  "[D]ebtors are entitled to a chapter 7 discharge
regardless of (1) whether they file a statement of intention,
(2) what they say in their statement of intention, and (3)
whether they carry out their stated intent."  <u>Ibid</u>., citing 11
U.S.C. § 727.

     More generally, the meaning of "surrender" and its effect
on nonbankruptcy rights (such as foreclosure procedures and
protections under State law) has been a matter of considerable

dispute among the bankruptcy courts and other Federal courts, and has yet to be definitively resolved.  Compare <u>In re Failla</u>, 838 F.3d 1170 (11th Cir. 2016), with <u>In re Ryan</u>, 560 B.R. 339. Much of the disagreement grows out of an effort to explain whether the term "surrender" carries the same meaning in both 11 U.S.C. § 521(a)(2)(A) and § 521(a)(4).[10]  "According to one court, the legislative history simply confirms that the statute is a muddle. . . . [T]he statute's text 'is so enigmatic . . . that the most that can be said in its defense is that the Congress settled upon a calculated ambiguity to resolve an intractable difference of opinion.'"  <u>In re Kasper</u>, 309 B.R. 82, 89 (Bankr. D. D.C. 2004), quoting from <u>In re Weir</u>, 173 B.R. 682, 685 (Bankr. E.D. Cal. 1994).  Moreover, we are handicapped in our review because EverBank has failed to brief the meaning of "surrender."

In view of the continuing debate among the Federal courts, including the Bankruptcy Courts, it would accomplish little for us to wade into these muddy waters and make any definitive

---

[10] As recognized in <u>In re Hayes</u>, 376 B.R. 55, 62 n.10 (Bankr. D. Mass. 2007), the United States Court of Appeals for the First Circuit did not definitively resolve the meaning of "surrender" in <u>In re Pratt</u>, 462 F.3d 14, 18-19 & n.4 (1st Cir. 2006) (declining to address to whom collateral must be surrendered under § 521[a][2]).  Nor do we view <u>In re Canning</u>, 706 F.3d 64, 69-70 (1st Cir. 2013), which in any event postdated Chacon's surrender here, as resolving all relevant questions about surrender and its effect on the debtor's nonbankruptcy rights as to the collateral.

ruling regarding the correct interpretation of the term
"surrender."  Nor, as explained infra, need we do so.  We do
find more persuasive the Ryan court's conclusion that
§ 521(a)(2)(A) is principally a notice statute, and a debtor's
statement of an intention to "surrender" a property does not
bind the debtor to physically turn over the property to the
creditor or to forfeit any nonbankruptcy rights in the property.
See Ryan, 560 B.R. at 347-351.  Accord In re Kasper, 309 B.R. at
86, 90, 92-93 (interpreting prior version of § 521[a][2][A]).
We are less persuaded by the Failla court's reasoning in
reaching the opposite conclusion, in part because it does not
adequately consider the effect of 11 U.S.C. § 554(c).  838 F.3d
at 1175-1177.  But which view will ultimately prevail is a
matter of bankruptcy law that we do not presume to predict.  The
standards for waiver and judicial estoppel make that
unnecessary.

    ii.  Waiver and judicial estoppel.  To determine whether
(as the judge concluded) Chacon's statement of intention to
surrender the property constituted a waiver of his right to
challenge the foreclosure, we ask whether he "intentional[ly]
relinquish[ed]" a known right.  Roseman v. Day, 345 Mass. 93, 99
(1962) (quotation omitted).  Similarly, resolution of the
judicial estoppel issue requires a determination of whether
Chacon's position in the bankruptcy proceeding is squarely

inconsistent with his challenge to the foreclosure in the
summary process proceeding.  "Judicial estoppel bars a party
from asserting a position directly inconsistent with, meaning
mutually exclusive of, the position asserted in a prior
proceeding where the party convinced the court to accept its
prior position."  Bay State Gas Co. v. Department of Pub.
Utils., 459 Mass. 807, 818 (2011).  See Otis v. Arbella Mut.
Ins. Co., 443 Mass. 634, 641 (2005), citing New Hampshire v.
Maine, 532 U.S. 742, 750 (2001) (for judicial estoppel to apply,
current position must be "clearly inconsistent" with prior
position).

     Given the considerable disagreement among courts that have
extensively analyzed the meaning of the term "surrender" in the
United States Bankruptcy Code, we cannot say that Chacon, by
electing to surrender, "intentionally" waived the right to raise
his nonbankruptcy-law challenge to foreclosure, or that his
current and prior positions are "clearly inconsistent."[11]  If the

---

[11] The Housing Court judge relied upon Ibanez v. U.S. Bank Natl.
Assn., 856 F. Supp. 2d 273, 276 (D. Mass. 2012), and Souza v.
Bank of Am. Natl. Assn., U.S. Dist. Ct., No. 1:13-cv-10181-PBS
(D. Mass. July 8, 2013), in reaching the opposite conclusion,
that judicial estoppel applies.  Those decisions (which postdate
Chacon's surrender here) rely on dicta in In re Pratt, 462 F.3d
at 18-19, which was not conclusive of the issue in this case.
See note 10, supra.  Additionally, the judge noted a passage in
a bankruptcy treatise citing Pratt; that treatise, however, also
cites the saving clause in 11 U.S.C. § 521(a)(2)(B) and notes
that Congress did not intend § 521 to reduce a debtor's
substantive rights vis-a-vis a creditor (except as provided in

courts themselves cannot agree on whether "surrender" means a
debtor gives up such arguments, then the effect of Chacon's
surrender is insufficiently clear to give rise to a waiver of
such arguments, or to judicial estoppel that bars raising them
in a later proceeding such as this one.

Conclusion.  Chacon was not barred by issue or claim
preclusion, waiver, or judicial estoppel from challenging the
foreclosure in the summary process proceeding.  As the Housing
Court judge correctly ruled in the first instance, EverBank's
failure to comply with 24 C.F.R. § 203.604(b) deprived it of the
right to invoke the statutory power of sale required to
foreclose, and the foreclosure was void ab initio.  The January
21, 2015, judgment for EverBank on its claim for possession is
vacated insofar as it applied to Gerardo Chacon, and judgment is
to enter for Gerardo Chacon on that claim.  The judgment is

---

another subsection not relevant here).  4 Collier on Bankruptcy
par. 521.14[3] (Resnick & Sommer eds., 16th ed. 2010).  In our
view, the ambiguity noted in Pratt and Collier further supports
the conclusion that Chacon neither waived nor was estopped from
asserting a foreclosure defense.

otherwise affirmed.

                                   <u>So ordered</u>.

                                   By the Court (Meade,
Maldonado & Sacks, JJ.[12]),

Joseph F. Stanton

Clerk

Entered:   July 28, 2017.

---

[12] The panelists are listed in order of seniority.